UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 06-175-JMH

UNITED STATES OF AMERICA,                                                                       PLAINTIFF,

V.                         **MAGISTRATE JUDGE'S REPORT**
                                     **& RECOMMENDATION**

WALTER BASCOM SHROUT,                                                   DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Walter Bascom Shrout's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. [Rs. 82, 96]. Consistent with local practice, the matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the Court recommends that Shrout's motion be denied.

I.   FACTUAL & PROCEDURAL BACKGROUND

Walter Bascom Shrout is the former Judge Executive of Bath County, Kentucky. United States v. Shrout, 298 Fed. Appx. 479, 480 (6th Cir. 2008). Shrout, facing a May 2006 primary election, was accused of engaging in a vote-buying scheme by manipulating the absentee voting process. Shrout was alleged to have given thousands of dollars in cash to others to be used to pay voters to cast absentee votes for Shrout. Id. at 481. Following an investigation by the FBI, Shrout was charged in a three-count indictment. The first-count alleged that between May 1 and May 15, 2006, Shrout conspired with others to solicit absentee voters and pay them to vote for him in violation of 42 U.S.C. § 1973i(c). [R. 1].

Taking the other charges out of order, the third count alleged that between July and October 2006, Shrout attempted to persuade others to conceal his participation in the vote buying scheme in violation of 18 U.S.C. § 1512(b)(3). Specifically, Shrout attempted to corruptly persuade others to conceal his involvement by paying for defense attorneys, making cash payments, and promising to pay the bills of individuals sent to prison. Id. at 481. Finally, on October 16, 2006, Shrout was interviewed by the FBI at his request. Shrout asserted that he was the victim of an extortion plot by others who accused him of vote-buying and demanded that he pay them $100,000 each to conceal his participation. Id. During the interview, Shrout denied to investigators ever having paid money for votes. This statement was the basis for the second count, which charged Shrout with knowingly and willingly making a materially false statement to FBI investigators in violation of 18 U.S.C. § 1001(a)(2). Id. at 481-82.

Following a three-day jury trial, Shrout was convicted of all counts. [R. 33]. The Court denied his motion for a new trial, [R. 59] and sentenced Shrout to a 27 month term of imprisonment with two years of supervised release. [R. 65]. On July 17, 2007, Shrout filed a notice of appeal arguing that he should be granted a new trial because the Court improperly allowed admission of a daily planner seized from the vehicle of a co-conspirator. The Sixth Circuit found no error and affirmed Shrout's conviction. Shrout, 298 Fed. Appx. at 480.

On October 26, 2009, Shrout filed a *pro se* motion to vacate, set aside, or correct his sentence. [R. 82]. Subsequent to filing his *pro se* motion, Mr. Shrout retained counsel who moved to amend the motion in order to assert a claim that Shrout was denied effective assistance of counsel. [R. 85]. Following the retirement of the magistrate judge initially assigned to this case, the undersigned granted the Defendant leave to amend his motion and set a briefing schedule on the

additional ineffective assistance of counsel claim. [R. 91]. Shrout, by counsel, filed a supplemental memorandum on May 21, 2010, asserting that trial counsel performed ineffectively. [R. 96]. The United States filed separate responses to the *pro se* motion and the supplemental memorandum. [Rs. 88, 97]. Accordingly, the Court will address those claims raised by Shrout *pro se* and those raised through his attorney separately.

## II. DISCUSSION

**A.  Jurisdiction**

As a threshold matter, the Court must first determine whether it has jurisdiction to consider Shrout's motion on the merits. Motions under § 2255 can only be brought by federal prisoners who are "in custody under sentence of a court ... ." 28 U.S.C. § 2255(a). Shrout completed his term of imprisonment and was released from federal custody on February 28, 2011.[1] As stated above, however, he was also sentenced to a term of two years supervised release. Since that term remains in effect, Shrout's motion is not moot because a favorable decision could redress an injury - his continued supervision - caused by an allegedly unconstitutional conviction. See United States v. Zack, 173 F.3d 431, 1999 WL 96996, *1 (6th Cir. Feb. 1, 1999) (table) ("A defendant serving a term of supervised release is 'in custody' for the purposes of § 2255."). Furthermore, because Shrout filed the motion before his term of imprisonment was completed, the Court is obligated to consider it. See Hampton v. United States, 191 F.3d 695, 697 (6th Cir. 1999) ("Where a prisoner's sentence is not fully expired at the time of filing, but expires during the litigation of the collateral attack, the

---

[1] The Bureau of Prisons maintains an on-line Inmate Locator Service which allows the public to track the location of federal inmates. This service indicates that defendant was released from federal custody on February 28, 2011. Pursuant to Fed.R.Evid. 201(c), the Court may take judicial notice of the information provided on the Inmate Locator Service. See Meador v. O'Brien, No. 04-cv-224-HRW, 2005 WL 2133598, *4 (E.D. Ky. Aug. 31, 2005).

proceeding does not become moot.").

**B.      Claims Raised in *Pro Se* Motion**

In his *pro se* motion, Shrout raises four grounds for relief, three of which implicate what he believes to have been the improper admission of evidence seized from a co-conspirator's vehicle. On March 2, 2007, less than two week's before Shrout's trial, Sonny Swartz was arrested on charges arising out of the same vote-buying scheme. Shrout, 298 Fed. Appx. at 482. A search incident to Swartz's arrest resulted in the seizure of address books, ledgers, and a 2006 daily planner. Entries in the planner reflected loans made to different people, including loans made to Walter Shrout on May 1, 12, 13, 15, and 16 that totaled $35,950. Id. In his habeas motion, Shrout contends that (1) the search of Swartz's vehicle and seizure of the daily planner was illegal; (2) the daily planner was not properly authenticated; and (3) the trial court failed to suppress the daily planner which was illegally seized.

As the United States points out in its response, [R. 88], Shrout's argument concerning the authentication of the daily planner was raised and rejected on direct appeal. Shrout, 298 Fed. Appx. at 482. Shrout argued that because Swartz did not testify at trial, the daily planner was not properly authenticated under Fed. R. Evid. 901, and the statements from the planner should not have been admitted as statements from a co-conspirator under Fed. R. Evid. 801(d)(2)(E). The Court of Appeals held that the Court did not abuse its discretion in admitting statements from the planner, as there was evidence that Swartz's name and personal contact information were listed in the planner, it was seized from Swartz's vehicle immediately after he exited, entries in the planner coincided with aspects of Swartz's business, and phone numbers of Swartz's family and known associates were in the planner. Id.

Issues that have been raised and rejected on direct appeal may not be relitigated in a collateral proceeding under section 2255 absent an intervening change in law or other exceptional circumstances. Jones v. United States, 178 F.3d 790, 795 (6th Cir. 1999). Shrout has not pointed to an intervening change in the law or any other exceptional circumstance that would warrant reviewing this claim. Accordingly, his claim that the daily planner was not properly authenticated by the Court should be denied.

Shrout's other two claims relating to the admission of the daily planner should likewise be denied as they are both procedurally defaulted and without merit. Shrout contends that the search of Swartz's vehicle was illegal because it was done without consent and without a warrant. Accordingly, he argues that the statements found in the planner seized from Swartz's vehicle should not have been admitted at trial and that the Court should have suppressed any evidence seized from Swartz's vehicle. Because Shrout did not present these claims on direct appeal, however, they are procedurally defaulted. A defendant is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982) ("[A] collateral challenge may not do service for an appeal."); Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003) ("Section 2255 is not a substitute for a direct appeal ... ."). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations and quotations omitted). Here, Shrout has not demonstrated either cause and prejudice, or that he is actually innocent.

Even if Shrout had attempted to make a showing of cause and prejudice, for example by asserting that his attorney performed ineffectively by failing to move for suppression of the evidence, he would not be entitled to any relief. Shrout has not demonstrated that he would have had standing to challenge the search of Swartz's vehicle. "[A] defendant has standing to challenge the admission of evidence only if the defendant's own constitutional rights have been violated." United States v. Davis, 430 F.3d 345, 359-60 (6th Cir. 2005). Standing is established if the defendant has a legitimate expectation of privacy in the places searched or the items seized. United States v. Waller, 426 F.3d 838, 843 (6th Cir. 2005) (citations omitted). Here, Swartz has not demonstrated a legitimate privacy interest in Swartz's vehicle or the items seized from it. Accordingly, any failure by Shrout's attorney to move for suppression of the evidence did not prejudice Shrout.

Shrout next argues that his due process rights were violated when an FBI agent, Kacey Gabriel, testified about a statement he took from Shrout, but materially altered parts of Shrout's statement. Again, this claim appears to be procedurally defaulted since it was not raised on direct appeal to the Sixth Circuit. In any event, the record reflects that Shrout's attorney extensively cross-examined Agent Gabriel about any discrepancies between the initial draft and the final report. [R. 56, Tr. Vol. III at 496-505]. After taking a statement from Shrout regarding the alleged extortion plot, Gabriel completed a form 302 which was silent on whether Shrout had ever said he had heard anything about vote buying or had any knowledge of vote buying. [Id. at 496]. At some point after Shrout had provided his statement, another agent investigating the vote buying asked Gabriel whether Shrout had made a statement regarding his knowledge of vote buying. [Id. at 501 - 02]. Accordingly, in his final form 302 draft, Gabriel added a paragraph which stated

6

> [t]hroughout the interview and, again, at the end of the conversation, Shrout continued to deny ever paying anyone for a vote. He also denied having any knowledge of any vote buying and could not explain why Butcher and the others would expect him to pay money for their silence or why anyone would say he paid for any votes.

[Id. at 502]. Shrout's § 2255 motion takes exception to Gabriel's testimony about the additional paragraph.

In claiming that the alteration between the initial and final drafts violated his right to due process, Shrout makes no attempt at explaining why admission of the final draft constituted error. He does not allege that the statement is indisputably false, that the prosecution knew it was false, or that admission of the statement affected the jury's verdict. Shrout claims that the admission of Gabriel's testimony regarding Shrout's statement was reversible error, but does not explain why it was in error. While Shrout's *pro se* pleading is entitled to liberal construction, Franklin v. Rose, 765 F.2d 82, 84-85 (6th Cir. 1985), he has not provided the Court with enough factual detail to construe an allegation for which relief could be granted.

Finally, Shrout claims that all of the alleged errors had the cumulative affect of depriving him of a fair trial. Because there are no errors to cumulate, however, this claim is without merit and should be denied.

## C.     Claims Raised Through Counsel

In a supplemental memorandum drafted by counsel, Shrout contends that his trial attorney performed ineffectively by failing to move for a transfer of venue, failing to move for a continuance in light of evidence discovered less than a week before trial, and failing to present any evidence on Shrout's behalf. For the reasons discussed below, these claims should be denied.

To prevail on a claim of ineffective assistance of counsel, the burden is on the defendant to demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). With respect to the first element, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. Id. at 688. Prejudice occurs where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential ... . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006) (citing Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)).

1. Failure to Move for a Transfer of Venue

Shrout first claims that trial counsel was ineffective for failing to move for a transfer of venue. This claim is based on the fact that Shrout's trial followed closely on the heels of other highly-publicized and related prosecutions. In United States v. Maze, No. 5:06-cr-155-JMH, for example, Donald "Champ" Maze, the former Bath County Attorney, pled guilty to vote buying and perjury following two days of trial. [Id. at R. 59]. Shrout claims that Maze's criminal prosecution was a "media circus" and that, during voire dire, a number of jurors in Shrout's case stated that they had heard of the related prosecutions. Because Shrout's trial was held less than a month after Maze's, he claims that his attorney's failure to move for a change of venue constituted an objectively

8

unreasonable strategic decision.

To prevail on an ineffective assistance of counsel claim based on counsel's failure to move for a change of venue due to prejudicial pretrial publicity, a defendant must show, at minimum, that the trial court would have, or should have, granted the motion. Dell v. Straub, 194 F.Supp.2d 629, 649 (E.D. Mich. 2002) (citing Tafoya v. Tansy, 9 Fed. Appx. 862, 871 (10th Cir. 2001)). This requires proof of actual or presumed prejudice on the part of the jury. Id. To demonstrate actual prejudice, Shrout must show that one or more jurors entertained an opinion before trial that he was guilty and that these jurors could not put this prejudice aside and render a verdict based solely upon the evidence. See Foley v. Parker, 488 F.3d 377, 387 (6th Cir. 2007). Actual prejudice is shown through a review of *voire dire* testimony and the extent and nature of the publicity that a fair trial was impossible. Maxwell v. White, 431 F.3d 517, 532 (6th Cir. 2005). Even absent proof of actual prejudice, "in extraordinary cases, where the trial atmosphere has been utterly corrupted by press coverage, a court must presume that pre-trial publicity has engendered prejudice in the members of the venire." Williams v. Bagley, 380 F.3d 932, 945 (6th Cir. 2004). But "mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint." Maxwell, 431 F.3d at 531, (quoting DeLisle v. Rivers, 161 F.3d 370, 382 (6th Cir.1998)). A fair juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Id. at 532 (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961)).

Turning first to the *voire dire* testimony, the prospective jurors were questioned about their knowledge of the case and each of them stated that they had not formed an opinion in Shrout's case and were capable of rendering an impartial verdict. [R. 54, Tr. Vol. I at 35-39, 47-49]. Prior

9

knowledge of a case, familiarity with the issues involved, or even some preexisting opinion on the merits does not disqualify a juror as long as the juror can agree to lay aside any impressions or opinions about the case and render a verdict based on the evidence presented in court. DeLisle, 161 F.3d at 382. Next, with respect to the extent and nature of the publicity surrounding the Bath County vote-buying prosecutions, Shrout has presented no evidence other than the bald statement that Maze's case was a "media circus". There is simply nothing before the Court to support a presumption of jury prejudice. In Skilling v. United States, 130 S.Ct. 2896, 2914-15 (2010), the Supreme Court held that juror exposure to news accounts of a crime, standing alone, does not presumptively deny a defendant of due process and a fair trial. Indeed, a presumption of prejudice attends only in extreme cases. Id. at 2915. There is nothing to suggest that this is such an extreme case where pre-trial publicity amounted to an "out-of-court campaign to convict," reflecting "inflamed public sentiment." DeLisle, 161 F.3d at 385 (quoting Shepherd v. Florida, 341 U.S. 50, 52 (1951)).

Shrout has not demonstrated either that his attorney's decision to not request a transfer of venue was objectively unreasonable or that he was prejudiced by that decision. Accordingly, this claim should be denied.

2. Failure to Move for a Continuance

Shrout next argues that counsel should have moved to continue the trial after the prosecution provided new evidence within a week of the trial. This new evidence included a daily planner, an address book, and cell phone records for certain individuals. Both sides agree that this evidence was damaging to Shrout. [R. 96 at 2; R. 97 at 4]. Shrout contends that by not seeking a continuance, trial counsel forfeited the opportunity to properly examine the evidence and conduct a meaningful cross-

10

examination of the lead investigator, FBI agent Darrin Turpin.

Regardless of whether counsel's decision to not seek a continuance was objectively reasonable, Shrout has failed to demonstrate that he was prejudiced by that decision. As the Sixth Circuit has noted, "[n]o absolute rule can be articulated as to the minimum amount of time required for an adequate preparation for trial of a criminal case." United States v. Faulkner, 538 F.2d 724, 729 (6th Cir. 1976). Accordingly, a defendant demonstrates prejudice by showing that a "continuance would have made relevant witnesses available, or would have added something to the defense." Id. at 730. Here, Shrout does not explain how additional time would have added anything to his defense. He only claims that a continuance would have permitted meaningful cross-examination of Agent Turpin. A review of the trial transcript, however, reveals that counsel did in fact conduct an extensive cross-examination of Turpin. [R. 56 Tr. Vol. III at 562-84; 589-92]. Shrout does not indicate how a continuance would have made this cross-examination more meaningful or effective. Because Shrout has not made a showing of prejudice, this claim should be denied.

3. Failure to Present Evidence

Finally, Shrout contends that his attorney's decision to not present any evidence or witnesses on his behalf was patently unreasonable. At the close of the prosecution's case, the following exchange took place at the bench:

> COUNSEL: We are not putting on any witnesses.
> THE COURT: You are not putting on any evidence at all?
> COUNSEL: No, sir, we stand with what we have.

[R. 56 Tr. Vol. III at 616]. Shrout contends that in addition to not presenting any evidence, his attorney failed to investigate potential witnesses willing to testify in his favor.

"Under Strickland, trial counsel has a duty to investigate his case ... ." Steward v. Wolfenbarger, 468 F.3d 338, 354 (6th Cir. 2006). "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." Id. (quoting Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005)). While defense counsel undoubtedly has a duty to investigate potential witnesses, in a § 2255 motion alleging the ineffective assistance of counsel, the defendant has the burden of showing "what evidence counsel should have pursued and how such evidence would have been material." Hutchison v. Bell, 303 F.3d 720, 748 (6th Cir. 2002) (citations omitted).

Shrout has not made such a showing here. In Shrout's supplemental memorandum, habeas counsel states that "[i]t is unknown what effort was made by trial counsel to contact alibi or other witnesses. Shrout has identified to the undersigned at least three witnesses who, according to Shrout, he wished to call in his favor." [R. 96 at 4]. Shrout, however, does not name these potential witnesses, summarize what their testimony would have been, or provide affidavits from them. Relief cannot be granted based on such bare allegations. See, e.g., Malcum v. Burt, 276 F.Supp.2d 664, 679 (E.D. Mich. 2003) (ineffective assistance of counsel claim failed where prisoner did not make an affirmative showing as to what the missing evidence would have been and prove that the testimony of potential witnesses would have produced a different result); Dell, 194 F.Supp.2d at 650 (vague and speculative allegations that defense counsel was ineffective for failing to investigate witnesses does not entitle him to relief).

Nor has Shrout demonstrated that he is entitled to an evidentiary hearing. An evidentiary hearing is not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." Amr v. United States, 280 Fed. Appx.

480, 485 (6th Cir. 2008). Defense counsel is generally under no duty to "call or even interview a witness whose testimony would not have exculpated the defendant." Millender v. Adams, 187 F.Supp.2d 852, 877 (E.D. Mich. 2002), *aff'd*, 376 F.3d 520 (6th Cir. 2004), *cert. denied*, 544 U.S. 921 (2005). Here, where there is nothing in the record to suggest that exculpatory evidence existed, and Shrout has not claimed that the three unnamed witnesses would have exculpated him had they testified at trial, there is no reason to hold an evidentiary hearing. See Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

Shrout also contends that pursuant to the Supreme Court's decision in United States v. Cronic, 466 U.S. 648 (1984), he does not need to show that he was prejudiced by counsel's failure to present evidence. In Cronic, the Court held that prejudice may be presumed where defense counsel fails to "subject the prosecution's case to meaningful adversarial testing." Id. at 659. The Court explained that "if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." Id. at 657.

The Supreme Court has clarified that the Cronic presumption applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the proceeding as a whole. Bell v. Cone, 535 U.S. 685, 696-97 (2002). There can be no serious argument that trial counsel completely failed to oppose the prosecution in this case. The record reflects that trial counsel extensively cross-examined the prosecution's witnesses, made numerous evidentiary objections, and made extensive opening and closing arguments. Accordingly, to prevail on his claim of ineffectiveness, Shrout is indeed required to show prejudice resulting from his attorney's alleged errors. Because he has not done so, his claim should be denied.

13

4. Cumulative Error

Shrout also argues that due to the cumulative effect of trial counsel's errors, he was deprived of the effective assistance of counsel. Because he has failed to establish that any constitutional errors occurred, there can be no cumulative error claim. See Getsy v. Mitchell, 495 F.3d 295, 317 (6th Cir.2007) (noting that a petitioner's "cumulative-error claim therefore fails because there are simply no errors to cumulate").

### III. CONCLUSION

For the reasons set forth above, it is recommended that the Defendant's Motion to Vacate, Set Aside, or Correct Sentence [Rs. 82, 96] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed December 6, 2011.



Signed By:
Edward B. Atkins  EBA
United States Magistrate Judge